USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN L. RESHARD,

                       Plaintiff,

        -against-

CITY OF NE YORK; CAPTAIN LASHAN
DECOSTA; and SKYLER RICHARD,

                       Defendants.

24-CV-2531 (MKV)

**OPINION & ORDER GRANTING
MOTION TO DISMISS WITH
LEAVE TO FILE AN AMENDED
COMPLAINT**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, proceeding *pro se* and *in forma pauperis*, [ECF No. 10], brings this action against the City of New York (the "City"), Lashan Decosta ("Captain Decosta") (s/h/a "Captain Delosta"), and Skyler Richard ("Officer Richard").[1]  Defendants have moved to dismiss.  [ECF No. 26] (the "Motion").  The Motion is supported by a memorandum of law, [ECF No. 27] (the "MTD"), and three exhibits, [ECF Nos. 27-1, -2, -3] (the "USPS Tracking History," "DOC Directive," and "IGRP Form," respectively).  Despite three Orders to Show Cause, [ECF Nos. 30, 31, 33], and two requests by Defendants to consider their motion unopposed, [ECF Nos. 29, 32], Plaintiff has filed no opposition.

## STANDARD

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

---

[1] The Court previously dismissed the New York City Department of Corrections and substituted the City.  [ECF No. 12].  In response to a *Valentine* Order, the City identified Officer Richard, who initially had been sued as "Jane Doe #1."  [ECF No. 20].

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they **suggest**," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis original, quotations and citations omitted).    But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), "has its limits, because[,]" to state a claim, "*pro se* pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure," which requires a complaint to make " 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Kastner v. Tri State Eye*, No. 19 Civ. 10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Fed. R. Civ. P. 8(a)(2)).

Under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true.  *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions.  *Id.*  (citing *Twombly*, 550 U.S. at 555).  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

On March 4, 2024, an altercation broke out in a housing unit at Rikers Island.  [ECF No 1] (the "Complaint" or "Compl.") at 4.  In response, a correctional officer who has since been identified as Skyler Richard "recklessly" discharged a cannister of oleoresin capsicum spray (more

commonly known, and referenced in the Complaint, as "pepper spray"). *Id.*   Plaintiff, who was detained at Rikers Island and using the phone in the housing unit at the time, was collaterally sprayed. *Id.*

As a result—the effects of the pepper spray having been exacerbated by Plaintiff's preexisting sarcoidosis—he was caused to "cough, choke, and throw up blood." *Id.*   Plaintiff informed Officer Decosta, who was on the scene, of his pre-existing condition and indicated to her that he could not breathe. *Id.*   She "completely ignored [him] and left the unit." *Id.*   Thereafter, the Deputy was dispatched to the unit, and Plaintiff was "eventually escorted to the infirmary[,]" where, after "several hours[,]" he was told that "no medical staff were available to render aid . . . and [he] was sent back to the housing unit[.]" *Id.*   The following morning, Captain Decosta came to Plaintiff to inform him that medical staff were still unavailable. *Id.* at 5.   Plaintiff continued to "throw up blood for over 48 hours[,]" during which time he received no further medical attention. *Id.*   Plaintiff executed and delivered his Complaint to prison authorities on March 4, 2024, *id.* at 6—*i.e.*, the date upon which he indicates the incident complained of occurred, *id.* at 4.

## ANALYSIS

The Court "liberally construe[s] [this] *pro se* plaintiff's pleadings and identif[ies] all possible claims, even those not explicitly referenced." *Taylor v. Quayyum*, No. 16 Civ. 1143 (GHW), 2021 WL 6065743, at *8 (S.D.N.Y. Dec. 21, 2021) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017)).   "Defendants interpret the [Complaint] as asserting claims . . . for excessive force and deliberate indifference to a detainee's medical needs . . . .   [The Court] agree[s] with this interpretation.   However, to the extent the [Complaint] can be interpreted to also state [a] claim[] for deliberate indifference to conditions of confinement arising from [Officer Richard's] use of pepper spray," the Court will address that claim, and other claims

potentially raised by the Complaint, as well. *Handy v. City of New York*, No. 19 Civ. 3885 (MKV) (OTW), 2021 WL 4482548, at *3 n.8 (S.D.N.Y. Aug. 27, 2021), *report and recommendation adopted*, 2021 WL 4481600 (S.D.N.Y. Sept. 30, 2021)

Accordingly, the Court treats the Complaint as raising, and addresses in turn, the following potential claims: a Section 1983 claim under the Due Process Clause of the Fourteenth Amendment alleging excessive force amounting to punishment; Section 1983 claims under the Due Process Clause of the Fourteenth Amendment alleging deliberate indifference to unsatisfactory conditions of confinement and medical needs; and tort claims under state law. The Court also addresses, in passing, the prospect of municipal liability for the various claims.

## I.    <u>Excessive Force</u>

The sole legal basis identified by Plaintiff for his claim is the "federal constitutional right[]" to be free from "cruel and unusual punishment" enshrined in the Eighth Amendment. Compl. at 2. But Plaintiff was at the time of the alleged incident a pre-trial detainee, *id.*, and "[a] pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Accordingly, "the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment[.]" *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

When evaluating an excessive force claim, "[t]he central concern is 'whether the government action was rationally related to a legitimate government action.'" *McArdle v. Ponte*, No. 17 Civ. 2806 (WHP), 2018 WL 5045337, at *4 (S.D.N.Y. Oct. 17, 2018) (quoting *Edrei v. Maguire*, 892 F.3d 525, 536 (2d Cir. 2018) (citation omitted)). Two pleading requirements facilitate this evaluation: First, "a pretrial detainee must allege that the defendant used force

'purposefully, knowingly, or (perhaps) recklessly.' " *Taylor*, 2021 WL 6065743, at \*5 (quoting

*Edrei*, 892 F.3d at 534 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 395–96 (2015)).  Second, he

must "allege that 'the force purposely or knowingly used against him was objectively

unreasonable.' " *Taylor*, 2021 WL 6065743, at \*5 (quoting *Edrei*, 892 F.3d at 534).

Here, Plaintiff alleges that Officer Richard, in response to an altercation, "pulled her pepper

spray and recklessly sprayed without any regard for anyone else on the unit[.]"[2]  Compl. at 4.

Fundamentally, "[i]n view of the deference accorded to correction officers in exigent

circumstances, [Plaintiff] has not plausibly alleged that the [Officer Richard's] use of the pepper

spray was unreasonable."  *McArdle*, 2018 WL 5045337, at \*5 (S.D.N.Y. Oct. 17, 2018).

Nevertheless, for the sake of thoroughness, the Court continues to analyze an area of some nuance

presented by this case.

At the outset, the Court notes that its determination here does not, and, for reasons

discussed below, probably cannot turn on the subjective first prong of the excessive force analysis.

As Defendants note, it appears that " 'liability for reckless use of force remains an open question

in this Circuit[.]' "  MTD at 4 (quoting *McArdle*, 2018 WL 5045337, at \*12, and citing *Kingsley*,

576 U.S. at 395).  This lacuna is particularly perplexing in the circumstances at issue here, where

---

[2] The Court notes that the excessive force claim could possibly be brought only against Officer Richard.  No other Defendant was personally involved, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotation omitted)), nor is there any basis upon which municipal liability might be inferred, *Holmes v. City of New York*, No. 17 Civ. 3874 (WHP), 2018 WL 4211311, at \*3 (S.D.N.Y. Sept. 4, 2018) ("A municipality may not be held liable under § 1983 under a theory of *respondeat superior*." (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Plaintiff was "an unintended target of an officer's . . . use of force[.]" *Taylor*, 2021 WL 6065743, at *5 (noting that "[t]he Second Circuit has yet to consider" this circumstance).

As the Supreme Court explained in *Kingsley*, the subjective prong "concerns the defendant's state of mind with respect to his physical acts—*i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world." 576 U.S. at 395. In this respect, the Parties' submissions do not admit of any doubt: Officer Richard intended to discharge her pepper spray. Specifically, "she deployed the [pepper] spray to break up a fight between other inmates[.]" MTD at 5 (citing Compl. at 4).

But "Plaintiff was inadvertently exposed as a bystander." *Id.* And it does not seem fair to discount Plaintiff's allegations that this inadvertent exposure was "reckless[,]" Compl. at 4, as a "bare restatement of the minimum standard for liability" insufficient as a matter of law to sustain his claim, MTD at 5 (citing *McArdle*, 2018 WL 5045337, at *4–5). *See Taylor*, 2021 WL 6065743, at *5–6 (noting that a plaintiff who was collaterally sprayed like Plaintiff here "ha[d] plausibly alleged that [the officer's] use of force was deliberate" where he had "describe[d] the officer as 'trigger happy' and allege[d] that [the officer] 'recklessly' sprayed" the actual target of the discharge, while declining to "decide whether, categorically, an unintended victim of pepper spray targeted at another has a cause of action for excessive force under the Fourteenth Amendment.").

Nevertheless, the Court need not solve the *mens rea* puzzle, because whether or not Officer Richard was reckless with respect to the possibility of accidentally spraying Plaintiff, the force she used was reasonable in response to the threat posed by fighting inmates. *Compare Vargas v. New York City Dep't of Corr.*, No. 17 Civ. 2544 (JGK), 2018 WL 3392873, at *3 (S.D.N.Y. July 12, 2018) ("With respect to the amount of force that was actually used against the plaintiff, it was objectively reasonable because Officer Trotman was attempting to stop an inmate fight, which is

a legitimate governmental objective for a DOC Officer and he did not use more force than necessary to quell the inmate altercation."); *Holmes*, 2018 WL 4211311, at *4 (similar); *Handy*, 2021 WL 4482548, at *4 ("Courts in this District have repeatedly found that the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim." (quotation omitted, collecting cases)) *with Taylor*, 2021 WL 6065743, at *5 (Plaintiff, a bystander, "has also alleged that the use of force was objectively unreasonable. According to the Complaint, [the officer] sprayed [the actual target] merely because he cursed at him, not because there was a security issue or other threat."); *Roundtree v. City of New York*, No. 15 Civ. 8198 (WHP), 2018 WL 1586473, at *7 (S.D.N.Y. Mar. 28, 2018) ("Moreover, the allegations suggest that certain corrections officers engaged in this activity for sport, paying each other on occasion, and refusing to allow prisoners to de-contaminate themselves or receive medical treatment for injuries sustained from the sprays.")

"An action is objectively reasonable when it is 'rationally related to a legitimate governmental objective.'" *Vargas*, 2018 WL 3392873, at *2 (quoting *Edrei*, 892 F.3d at 536 (citing *Kingsley*, 576 U.S. at 397)). In view of the "[c]onsiderations" offered by the Supreme Court in *Kingsley*, 576 U.S. at 397 (including, among others, "the relationship between the need for the use of force and the amount of force used"), there can be no question that the use of pepper spray alleged here meets this standard of reasonableness.

Accordingly, Plaintiff has failed to state a Section 1983 claim for excessive use of force under the Due Process Clause of the Fourteenth Amendment.

## II.    Deliberate Indifference

### a.    *Exhaustion*

Plaintiff's deliberate indifference claims fail for a threshold reason, namely: Plaintiff's failure to exhaust available administrative remedies.[3]  Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Nevertheless, "a complaint may be dismissed for failure to exhaust administrative remedies if the failure is clear from the face of the complaint."  *Bush v. City of New York*, No. 19 Civ. 5319 (ATB) (CM), 2021 WL 1198321, at *2 (S.D.N.Y. Mar. 30, 2021).

Here, "[t]he DOC has a formal grievance process known as the Inmate Grievance and Request Program (the 'IGRP'), which the Court may take judicial notice of as a matter of public record."  *Id.* (footnote omitted).  Defendants have provided a copy of the IGRP.  *See* IGRP Form. "Given the number of administrative steps in the IGRP and the amount of time allocated for each step, it is virtually impossible that the plaintiff could have completed these steps and received a final decision, thereby exhausting the IGRP procedures, before initiating this action."  *Young v.*

---

[3] "Defendants do not argue that Plaintiff failed to exhaust his excessive force claim[.]"  MTD 13 n.5.

*Carter*, 21 Civ. 8973 (MKV), 2023 WL 2430408, at *3 (S.D.N.Y. Mar. 9, 2023) (cleaned up, quotation omitted); *Bush*, 2021 WL 1198321, at *3 (similar).  Indeed, Plaintiff appears to have submitted the Complaint on the very day the events complained of occurred.  *Compare* Compl. at 6 ("Date on which I am delivering this complaint to prison authorities for mailing: 3-4-24") *with* Compl. at 4 ("Date(s) of occurrence: 3-4-24").  Nor has Plaintiff alleged remedial unavailability. *Cf. Williams v. Correction Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (describing bases of unavailability).

Even if it were not clear from the face of the Complaint that Plaintiff has not exhausted available administrative remedies, Plaintiff's deliberate indifference claims would fail on the merits.[4]

### b.  *Conditions of Confinement*

To state a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, "a pretrial detainee must satisfy . . . an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions."  *Darnell*, 849 F.3d at 29.

To whatever extent Plaintiff's Complaint can be understood as raising a conditions of confinement claim, "[t]he allegations undergirding [his] excessive force claim are indistinguishable from the allegations relating to his conditions of confinement claim."  *McArdle*, 2018 WL 5045337, at *5.  While recklessness ***does*** suffice under the subjective prong here,

---

[4] "PLRA exhaustion is not jurisdictional, which is why a district court is allowed to dismiss plainly meritless claims without first addressing the often more complex question of exhaustion." *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (cleaned up, quotation omitted).

*Darnell*, 849 F.3d at 32 (" '[D]eliberate indifference[]' . . . is roughly synonymous with 'recklessness[.]' "), Plaintiff's alleged injuries were not "sufficiently serious to constitute objective deprivations of the right to due process[,]" *id.* at 29.  *See Taylor*, 2021 WL 6065743, at *6 ("The temporary discomfort caused by pepper spray does not constitute a sufficiently serious objective injury." (cleaned up, quotation omitted, collecting cases)).

Arguably, "throw[ing] up blood[,]" Compl. at 4, takes Plaintiff's allegations beyond the ambit of "discomfort," *Taylor*, 2021 WL 6065743, at *6.  However, in this connection, the Court notes that the Second Circuit's admonition that "confinement conditions must be measured by . . . severity and duration, not the resulting injury," *Darnell*, 849 F.3d at 32, is somewhat difficult to heed when discussing an isolated incident like the one-off discharge of pepper spray at issue here.  This probably reflects the reality that, while the Court is obligated to test Plaintiff's claims for plausibility from all viable angles, the facts alleged more naturally fit, if anything, a theory of excessive force or deliberate indifference to medical needs.  *Cf.* MTD (not addressing possible conditions of confinement theory); *Darnell*, 849 F.3d at 32 (listing a series of ongoing, durational conditions while noting, *id.* at 31, that the Second Circuit "has been reluctant to impose bright-line durational or severity limits"); *Holmes*, 2018 WL 4211311, at *5 ("liberally constru[ing] the Amended Complaint to raise claim[] for . . . deliberate indifference to conditions of confinement based on . . . exposure to chemical spray"); *Handy*, 2021 WL 4482548, at *3 n.8 (similar).

As currently alleged, Plaintiff has not stated a claim for deliberate indifference to the conditions of his confinement.

### c.  *Medical Needs*

Accordingly, the Court proceeds to consider Plaintiff's allegations in terms of deliberate indifference to his medical needs.  "Courts analyze such claims under an analogous two-prong test

to that which applies to claims for deliberate indifference to conditions of confinement." *Holmes*, 2018 WL 4211311, at *6; *see also Darnell*, 849 F.3d at 33 n.9 ("[D]eliberate indifference means the same thing for each type of claim under the Fourteenth Amendment.").  "As with a deliberate indifference to conditions of confinement claim, the plaintiff must establish both an objective element and a subjective element to allege sufficiently a constitutional violation for deliberate indifference to medical needs." *Vargas*, 2018 WL 3392873, at *3.

Again, the "first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Taylor*, 2021 WL 6065743, at *6 (quotation omitted).  The second requirement is nominally subjective, insofar as "the charged officials must be [at least] subjectively reckless in their denial of medical care." *Id.* (quotation omitted).  But, somewhat trickily, "the Second Circuit [has] held that [this requirement]—often referred to as the '*mens rea* prong'—is to be assessed objectively." *Id.* (citing *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (2d Cir. 2017) (citing *Darnell*, 849 F. 3d at 33, 35).  That is, "rather than ask whether the charged official knew of and disregarded an excessive risk to inmate health or safety, courts are to instead determine whether the official knew, ***or should have known*** that his or her conduct posed an excessive risk to health or safety." *Lloyd*, 246 F. Supp. 3d at 719 (cleaned up, quotations omitted, emphasis added).

A claim that meets this prong will allege "that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotations omitted).  Where, however, the claim is premised not on outright denial of treatment, but rather delay, " 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant' and the Court should 'focus on the challenged delay or

interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Williams v. City of New York Dep't of Correction*, No. 19 Civ. 9528 (ER), 2020 WL 3893929, at *4 (S.D.N.Y. July 10, 2020) (emphases omitted, quoting *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)).

Plaintiff has not alleged a sufficiently serious medical condition, whether actually existing or potentially resulting from a delay in treatment. "[W]hile undoubtedly uncomfortable and painful, the[] temporary effects of chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain." *Holmes*, 2018 WL 4211311, at *7. This conclusion is not changed if the Court construes Plaintiff's Complaint as alleging mere delay, rather than outright denial of treatment—as seems to be the case, *see* Compl. at 5 (alleging that, the day after the incident, Plaintiff was informed "that there still were no medical staff available to render [him] aid"). *See Roundtree*, 2018 WL 1586473, at *10 ("[T]he type of care that he was prevented from accessing was not tantamount to causing serious damage to his health[,]" unlike, for example, delaying treatment of a "life-threatening and fast-degenerating condition for three days" or a "major surgery for over two years[.]" (quotations omitted)).

Nor is this conclusion changed by Plaintiff's allegation that he already suffered from sarcoidosis. *See Williams*, 2020 WL 3893929, at *5 ("Although the Court appreciates that Williams was in pain and experienced respiratory distress, he has failed to allege that the delay in treatment exacerbated his asthmatic condition to the point of degeneration or extreme pain." With respect to plaintiff's "claim that he was denied medical care altogether[,]" while he "alleges that he has had to use his [asthma] pump more frequently as a result of the pepper spray incidents, he has not alleged that this is a serious condition that has caused him chronic and substantial pain or that has significantly affected his daily activities." (citations omitted)); *Holmes v. City of New York*,

12

2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018) ("The Amended Complaint is bereft of allegations that shed light on the seriousness of the prior rib injury, what treatment Holmes had sought, when it occurred, or the extent to which it had healed at the time of the MDC spraying incidents. Nor does Holmes indicate whether the John Doe medical provider had any basis to know that Holmes had previously suffered from a broken rib or that his condition might develop into anything more serious at the time he visited the medical clinic.").

Finally, with respect to the second prong, Plaintiff does not and cannot allege that any Defendant in this case was responsible for any denial or delay of treatment.[5] First, Officer Richard is sued "for administering the spray, [but] Plaintiff does not allege that [she] was . . . involved in his medical care." *Handy*, 2021 WL 4482548, at *6 (emphasis omitted); *see also Darby*, 14 F.4th at 130 ("Darby fails to state a claim against the Doe Defendants because he does not allege any personal involvement in alleged constitutional deprivations." (cleaned up, quotation omitted)); *Vargas*, 2018 WL 3392873, at *4 ("Moreover, the plaintiff has not alleged any facts in his Complaint to suggest that Officer Trotman was involved at all in his medical care or lack of medical care.").

Captain Decosta, on the other hand, is alleged to have visited Plaintiff's cell the following day—Plaintiff having been taken, shortly after Captain Decosta "ignored [him]" in the immediate wake of the incident, to the infirmary—to update him on the continued unavailability of medical staff. Compl. at 4–5. These allegations do not come close to "establish[ing] that [Captain Decosta] possessed a sufficiently culpable state of mind." *Darby*, 14 F.4th at 129 (quotation omitted). Nor

---

[5] For completeness, the Court notes that Plaintiff has not sued the Deputy or the medical staff of the facility, and, even if he had, that those claims would fail on the facts alleged. *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) ("To allow Darby's claims against the Doe Defendants to proceed, we would have to assume the elements of liability.").

13

has Plaintiff alleged any facts upon which municipal liability could attach to the City. *See Holmes*, 2018 WL 4211311, at *3 ("Here, the Amended Complaint lacks ***any*** factual allegations suggesting the existence of a formal policy or any actions or decisions made by municipal decisionmakers that caused Holmes to be exposed to chemical spray, caused his requests for medical attention to go unanswered, or caused his grievances to be ignored." (emphasis original)).

### III.    <u>Other Claims and Defenses</u>

Because Plaintiff has not alleged a constitutional violation, the Court declines to consider the question of whether the individual Defendants are entitled to qualified immunity. *Cf.* MTD at 7, 17. Likewise, to the extent that the Complaint could be liberally construed to raise claims under state law, *Taylor*, 2021 WL 6065743, at *8 ("The City Defendants did not address any of Plaintiff's possible state law causes of action in their motion. Courts, however, have an obligation to liberally construe a *pro se* plaintiff's pleadings and identify all possible claims, even those not explicitly referenced."), the Court "declines to exercise supplemental jurisdiction over" such claims because "it has dismissed all claims over which it has original jurisdiction," *Vargas*, 2018 WL 3392873, at *4 (quotation omitted).

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, it is HEREBY ORDERED that Defendants' motion to dismiss is GRANTED. However, because "*a pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[,]" *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017)

14

(summary order) (cleaned up, quotation omitted), it is FURTHER ORDERED that Plaintiff is granted an additional opportunity to amend his Complaint. [6]

Plaintiff has thirty days from entry of this Order to file an amended complaint. Thereafter, Defendants shall have two weeks to file any motion to dismiss, and any subsequent briefing shall occur on the schedule contemplated by the Local Rules. **Plaintiff is on notice that failure to amend his Complaint within the window set by the Court in this Opinion and Order will result in dismissal of his claims with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).**

The Clerk of Court is respectfully requested to terminate docket entry number 26, and to mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

**Dated:   February 27, 2026**
**New York, New York**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[6] Plaintiff previously was granted an opportunity to amend in response to the arguments laid out in Defendants' pre-motion letters. *See* [ECF Nos. 21, 22, 23]. Plaintiff declined to amend, and thereafter failed to oppose Defendant's motion to dismiss, despite multiple opportunities to do so. *See* [ECF Nos. 31, 33].